Filed 4/16/26  Memarzadeh v. Bd. of Appeals of the City and County of S.F. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| MAHER MEMARZADEH,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>BOARD OF APPEALS OF THE CITY AND COUNTY OF SAN FRANCISCO et al.,<br><br>    Defendants and Respondents. | A172009<br><br>(City and County of San Francisco Superior Ct. No. CPF-22-517700) |

Appellant Maher Memarzadeh was denied an application for a zoning variance, and respondent Board of Appeals for the City and County of San Francisco (Board of Appeals) rejected his appeal.  Memarzadeh then filed a petition for a writ of administrative mandamus in the trial court, but the court dismissed it for being untimely.

In this appeal, Memarzadeh contends that his petition was timely, and he argues for the first time that the Board of Appeals and respondent San Francisco Planning Department (Planning Department) should be estopped from arguing to the contrary.  Specifically, he maintains that text in the board's form notice of decision "create[d] a trap for the unwary or uninformed" by stating that the deadline to challenge the decision might be governed by Code of Civil Procedure section 1094.6 when it is actually

1

governed by Government Code section 65009, subdivision (c)(1)(E).[1] Although we do not dispute that the notice is unclear and should be revised, we ultimately agree with the trial court that the plain language of the relevant statute compels a finding that Memarzadeh's petition was untimely. We therefore affirm.

## I.
### FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken from Memarzadeh's petition. (See *Royalty Carpet Mills, Inc. v. City of Irvine* (2005) 125 Cal.App.4th 1110, 1115 (*Royalty Carpet*) ["As with a demurrer to a complaint in a civil action, when a trial court considers a motion to dismiss a petition for a writ of mandate it assumes the truth of the petition's allegations."].)

Memarzadeh owns property on Cortland Avenue in San Francisco. The rear building of the property is zoned for commercial use. In April 2016, Memarzadeh filed a planning application for a rear-yard variance so he could build a one-story vertical addition to the rear building. The Planning Department held a hearing on the variance request on March 24, 2021, and denied the request. Memarzadeh timely appealed to the Board of Appeals, which denied the appeal following a hearing. Memarzadeh requested a rehearing, which was denied on December 1, 2021.

The Board of Appeals on December 2, 2021, mailed a notice of decision and order denying Memarzadeh's appeal. The bottom of the notice states: "If this decision is subject to review under Code of Civil Procedure § 1094.5, then the time within which judicial review must be sought is governed by California Code of Procedure, § 1094.6." The parties agree that Memarzadeh

_____

[1] All undesignated statutory references are to the Government Code.

had 90 days (until March 2, 2022) to file a challenge to the board's decision in the trial court. Proceeding without an attorney, Memarzadeh filed a petition for writ of mandamus (Code Civ. Proc., § 1094.5) one day before that deadline, on March 1, 2022.

Memarzadeh contends he met his filing obligations since, according to him, the matter is governed by Code of Civil Procedure section 1094.6, subdivision (b), which provides a 90-day filing deadline and is silent about *service* of such a petition. Respondents, on the other hand, contend that Memarzadeh's filing obligations were governed by section 65009, subdivision (c)(1)(E), which provides that a challenge must be filed *and served* within 90 days. The record contains two proofs of service filed on September 13, 2022, indicating that the Board of Appeals was personally served on September 7, 2022, and that the Planning Department was personally served on September 8, 2022 (i.e., more than six months after Memarzadeh filed his petition).

Memarzadeh hired an attorney to represent him in this matter in July 2023. More than a year later, in August 2024, respondents demurred to the petition on the ground it was barred by the statute of limitations (§ 65009, subd. (c)(1)). Memarzadeh opposed the demurrer and argued that section 65009 does not apply to the denial (as opposed to the approval) of a variance application.

The trial court concluded that the petition was time-barred by section 65009, subdivision (c)(1), and sustained respondents' demurrer.

II.

DISCUSSION

A. *Memarzadeh's Petition Was Time-barred Because He Did Not Serve It Within 90 Days.*

Memarzadeh renews his argument that he was not required to serve his petition on respondents within 90 days under section 65009. We review de novo an order sustaining a demurrer without leave to amend. (*Honig v. San Francisco Planning Dept.* (2005) 127 Cal.App.4th 520, 524 (*Honig*).) The question whether the statute of limitations applies to a cause of action is likewise a question of law we review de novo. (*Stockton Citizens for Sensible Planning v. City of Stockton* (2012) 210 Cal.App.4th 1484, 1491 (*Stockton Citizens*).) Because the petition disclosed on its face that the action was barred by the statute of limitations (*Honig* at p. 524), we affirm.

"Section 65009 is located in division 1 (Planning and Zoning) of title 7 (Planning and Land Use) of the Government Code. It is a lengthy statute with several subdivisions." (*Weiss v. City of Del Mar* (2019) 39 Cal.App.5th 609, 618 (*Weiss*).) The purpose of the statute is to reduce the time it takes to approve affordable housing and related public benefits. (§ 65009, subd. (a)(2); *Weiss* at p. 619.)

Subdivision (c)(1) of section 65009 provides in relevant part that "no action or proceeding shall be maintained in any of the following [six] cases by any person unless the action or proceeding is commenced and service is made on the legislative body within 90 days after the legislative body's decision." As relevant here, one of those "cases" is where a person seeks "(E) [t]o attack, review, set aside, void, or annul any decision on the matters listed in Sections 65901 and 65903, or to determine the reasonableness, legality, or validity of any condition attached to a variance, conditional use permit, or any other permit." (See also *Weiss*, *supra*, 39 Cal.App.5th at p. 620.) This

4

subsection thus applies to two types of situations: (1) where a petitioner seeks to challenge (i.e. "attack, review, set aside, void, or annul") a type of matter listed in two different statutes *or* (2) where a petitioner seeks to assess the propriety of a condition attached to a variance or permit.

Memarzadeh first contends that section 65009, subdivision (c)(1)(E), does not apply because the *second* part of the subsection does not apply. He argues that "[t]here is nothing in the text of Section 65009(c)(1) regarding variances except for conditions that may be attached to their approval," which was not an issue here. While that may be technically true, it overlooks the fact that the statute governs attacks on "matters listed in Sections 65901 and 65903" (§ 65009, subd. (c)(1)(E)). Sections 65901, subdivision (a), and 65903, in turn, describe various actions taken by local zoning officials[2] and boards of appeal[3]—including the one taken here. Section 65901, subdivision (a), specifically mentions a zoning administrator's consideration

---

[2] Section 65901, subdivision (a), provides that "[t]he board of zoning adjustment or zoning administrator shall hear and decide applications for conditional uses or other permits when the zoning ordinance provides therefor and establishes criteria for determining those matters, and applications for variances from the terms of the zoning ordinance. The board of zoning adjustment or the zoning administrator may also exercise any other powers granted by local ordinance, and may adopt all rules and procedures necessary or convenient for the conduct of the board's or administrator's business."

[3] Section 65903 provides that "[a] board of appeals, if one has been created and established by local ordinance, shall hear and determine appeals from the decisions of the board of zoning adjustment or the zoning administrator, as the case may be. Procedures for such appeals shall be as provided by local ordinance. Such board may reverse or affirm, wholly or partly, or may modify the order, requirement, decision or determination appealed from, and may make such order, requirement, decision, or determination as should be made, and such action shall be final."

5

of "*applications for variances from the terms of the zoning ordinance.*"[4] (Italics added.)

Under these statutes, Memarzadeh was subject to the filing requirements of section 65009, subdivision (c)(1)(E). The Planning Department (acting as zoning administrator) considered his "application[] for [a] variance[] from the terms of the zoning ordinance" (§ 65901); the Board of Appeals "hear[d] and determine[d his] appeal[] from the decision[] of the . . . zoning administrator" (§ 65903); and Memarzadeh sought to "attack, review, set aside, void, or annul" those decisions. (§ 65009, subd. (c)(1)(E).) Because Memarzadeh did not serve his challenge within 90 days, his petition was therefore untimely. (*Royalty Carpet*, *supra*, 125 Cal.App.4th at p. 1119 ["Even if a petition is timely under Government Code section 65009, subdivision (c), if it is not personally served as required by statute, the petition must be dismissed."].)

As we understand it, Memarzadeh contends that section 65009, subdivision (c)(1)(E), applies to "the matters listed in Sections 65901 and

---

[4] We reject Memarzadeh's somewhat related argument that applying section 65009, subdivision (c)(1)(E), here would reduce part of the statute to "surplusage." He claims that if the statute applied to all matters listed in sections 65901 and 65903—including decisions on variances—it would be unnecessary to include the separate clause applying to "the reasonableness, legality, or validity of any condition attached to a variance." (§ 659001, subd. (c)(1)(E).) But sections 65901 and 65903 do not specifically refer to reasonability determinations—only variance applications (§ 65009, subd. (a))—so referring to the matters listed in the other statutes does not render the second part of the statute "surplusage." The court in *AIDS Healthcare v. City & County of San Francisco* (N.D.Cal. 2016) 208 F.Supp.3d 1095 held that section 65901, subdivision (c)(1)(E), applied to the denial of a conditional use application—a matter listed in sections 65901 and 65903—and did not expand the statute more broadly, as Memarzadeh claims. (*AIDS Healthcare* at pp. 1099–1101.)

65903" (*ibid.*) only where those actions are taken by a "legislative body" (*id.*, subd. (c)(1)).  Again, section 65009, subdivision (c)(1), provides that no proceeding shall be maintained in any of six "cases" unless the action is commenced and service is made "on the *legislative body* within 90 days after the *legislative body's* decision."  (Italics added.)  According to Memarzadeh, even though the Planning Department considered Memarzadeh's variance application, a matter listed in section 65901, subdivision (a), the limitations period does not apply because the department is not a "legislative body."  As Memarzadeh apparently acknowledges, this would mean that section 65009, subdivision (c)(1)(E), would apply only "[i]n small cities or sparsely-populated counties, [where] there may not be a sufficient number of land use applications to justify the hiring of a zoning administrator much less a board of appeals."  Interpreting the statute as Memarzadeh urges would mean that essentially all published cases interpreting section 65009 were wrongly decided (or, in his words, decided "with little apparent thought, analysis or justification").

We agree with prior caselaw and reject Memarzadeh's interpretations. *Stockton Citizens*, *supra*, 210 Cal.App.4th 1484, held that the 90-day limitations period in section 65009, subdivision (c)(1)(E), applied to the approval of a Wal-Mart Supercenter by the director of the city's community development department since the director was exercising powers granted by section 65901.  (*Stockton Citizens* at pp. 1487, 1492.)  Memarzadeh misrepresents the holding of *Stockton Citizens* in two ways.  He first claims that it focused on "**whose decisions** are subject to the 90-day rule rather that **what decisions** are subject to the 90-day rule," but that is simply not the case.  The case specifically noted that the director was exercising powers granted under section 65901 when it approved the development.  (*Stockton*

7

*Citizens*, *supra*, 210 Cal.App.4th at p. 1493.)  Memarzadeh also says *Stockton Citizens* supports his position that section 65009's "reference to Sections 65901 and 65903 allow[s] a zoning administrator, board of zoning adjustment, or board of appeals to make the same decisions that a legislative body could make, and that the 90-day rule applies only to those decisions which would be subject to the rule if made by a legislative body."  *Stockton Citizens* actually says the opposite.  It noted that section 65009, subdivision (c)(1), lists six cases involving decisions of legislative bodies (*id.*, subd. (c)(1)(A), (B), & (D)), and three that do not, including subdivision (c)(1)(E) (*id.*, subd. (c)(1)(C), (E) & (F)).  (*Stockton Citizens* at p. 1495.)  Subdivision (c)(1)(E)'s reference to *any decision* on matters listed in sections 65901 and 65903—with no reference to a legislative body—was an indication that the Legislature "did not intend to exclude decisions by zoning administrators from . . . subdivision (c)(1)(E)."  (*Stockton Citizens* at p. 1496.)  And the court explained that before the statute was amended to add what is now subdivision (c)(1)(E), the subdivision included only actions that legislative bodies take, and the wording was never harmonized after other (non-legislative) entities were added.  (*Stockton Citizens* at p. 1496, fn. 8.)  We disagree with Memarzadeh that *Stockton Citizens* supports his argument that the statute of limitations applies only if the zoning administrator makes a decision that a legislative body could make.

In *Weiss*, *supra*, 39 Cal.App.5th 609, the petitioner asked a city under its local scenic-view ordinance to compel a neighbor to trim landscaping, and the planning commission denied the application.  (*Id.* at p. 614.)  The city council then denied the petitioner's appeal.  (*Ibid.*)  The petitioner filed a petition for a writ of administrative mandate within 90 days but did not serve the petition in that timeframe.  (*Ibid.*)  The court held that the petitioner's

failure to serve the petition within 90 days barred the action since the planning commission's ruling under the ordinance was one of the 'matters listed" in section 65901, subdivision (a)—"an exercise of its 'powers granted by local ordinance' on a land use/zoning issue." (*Weiss* at p. 620.) It did not matter that it was the planning commission, instead of a "zoning board" (§ 65901, subd. (a)), that took action, since the commission "was functionally acting in a zoning board capacity when ruling on [the] application." (*Weiss* at p. 621.) Memarzadeh claims that this conclusion "turns Section 65009(c)(1) on its head" since the court found that a legislative body (covered by the statute) was acting as an administrative board (which Memarzadeh claims is not covered by the statute). We are not persuaded. Because the action under attack in *Weiss* was a "matter listed" in section 65901, it follows that section 65009, subdivision (c)(1)(E), applied.

Memarzadeh also apparently claims that *Weiss* insufficiently considered section 65009's legislative purpose of mitigating the state's housing crisis, since "expanding the 90-day rule to development applications which are *denied*, does not serve the statute's intended purpose." (Italics added.) But where the statutory language is clear, there is no need to analyze whether the quick review of a denial of a variance is consistent with the legislative goal (especially since no inconsistency is readily apparent).

Memarzadeh also misleadingly points to section 65906, which he claims "govern[s]" variances, not sections 65901 and 65903. All three statutes are contained in the same title and division of the Government Code as section 65009. And they are all contained in article 3 (Administration) of chapter 4 (Zoning Regulations) of the code. The latter two "zoning-related statutes" (*Weiss, supra,* 39 Cal.App.5th at p. 620) govern the creation of city or county zoning agencies (§ 65901) and the duties of a board of appeals

9

(§ 65903). Section 65906 sets forth rules governing variances, which are the types of things that the entities established by sections 65901 and 65903 apply. In other words, these statutes do not apply to distinct situations and instead work together. Indeed, section 65901, subdivision (b), specifically provides that the legislative body of a city or county may pass an ordinance that authorizes decisions on variance applications *in accordance with the variance requirements set forth in section 65906.*

The trial court's ruling was consistent with the plain language of section 65009, subdivision (c)(1)(E), and well-reasoned caselaw, and we likewise conclude that Memarzadeh's petition for a writ of mandate was untimely because it was not served within 90 days of the Board of Appeals' decision upholding the denial of a variance.[5]

### B. Although the Board of Appeals' Reference in Its Order to the Code of Civil Procedure Was Potentially Misleading, Memarzadeh's Estoppel Claim Was Forfeited.

Memarzadeh next argues, for the first time on appeal, that respondents should be equitably estopped from relying on section 65009 since they directed him to another statute when denying his appeal to the Board of Appeals. Although we are more sympathetic to this argument than are respondents or than was a previous court that considered the issue, we ultimately reject it.

---

[5] In reaching this conclusion, we reject Memarzadeh's argument, raised for the first time on appeal, that the trial court could not consider the proofs of service he filed when ruling on respondents' demurrer since respondents did not request judicial notice of the documents. He notes that the date of service was not alleged in his petition—which of course was only the case since he did not serve it until months later. He was the one who subsequently filed the proofs of service, and it was unnecessary for the trial court to take judicial notice of a pleading in its own file.

10

" 'A defendant will be estopped to assert the statute of limitations if the defendant's conduct, relied on by the plaintiff, has induced the plaintiff to postpone filing the legal action until after the statute has run. [Citation.]' [Citation.] The elements of equitable estoppel are: (1) the party to be estopped must be apprised of the facts; (2) that party must intend that his or her conduct be acted on, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and (4) the party asserting the estoppel must reasonably rely on the conduct to his or her injury." (*Honig, supra,* 127 Cal.App.4th at p. 529.)

As we have said, the Board of Appeals' decision denying Memarzadeh's appeal directed him to Code of Civil Procedure section 1094.5 and made no mention of the statute that actually governed his time to file a petition in the trial court. The wording on the form order appears to be identical to the wording the Board of Appeals used on a decision more than two decades ago, as set forth in *Honig, supra,* 127 Cal.App.4th at pages 525 and 529. There, as here, the appellant did not file *and serve* a petition within 90 days of the board's order. (*Id.* at p. 525.) And for the first time on appeal, the appellant in *Honig* argued that the respondents should be equitably estopped from relying on section 65009, subdivision (c)(1)(E), "because they deliberately misled her as to the applicable limitations period" on the Board of Appeals' notice of decision. (*Honig* at pp. 528–529.) *Honig* first rejected the appellant's argument since it had not been raised in the trial court. (*Id.* at p. 530.) "This [forfeiture] rule is especially applicable to the doctrine of estoppel, which includes factual elements that must be established in the trial court." (*Ibid.*) We likewise reject Memarzadeh's fact-specific claim since it is raised for the first time on appeal. In doing so, we reject his argument

11

that he preserved the issue—even though he did not mention estoppel—by arguing that he complied with Code of Civil Procedure section 1094.6. More was necessary to put respondents and the trial court on notice that they should analyze the factual elements of an estoppel claim.

Had Memarzadeh raised the issue of estoppel in the trial court, we might be more sympathetic on the merits than were our colleagues in Division Five in *Honig*. They concluded that even if the equitable estoppel issue was cognizable on appeal, it lacked merit since "nothing in the language of the notice of the Board of Appeals, or in the Code of Civil Procedure sections referenced in that notice, directed appellant to apply an incorrect and untimely limitations period to filing or serving her petition. . . . [T]he notice did not indicate that timely filing of her petition would be sufficient to obtain judicial review, did not purport to address the requirements for serving the petition, and did not state that failure to comply with any service requirements would be excused." (*Honig*, *supra*, 127 Cal.App.4th at p. 530.) The court also noted that Code of Civil Procedure section 1094.6, subdivision (g), which was referenced in the notice (as it is here), "cautions that section 1094.6 'shall prevail over any conflicting provision in any otherwise applicable law relating to the subject matter, unless the conflicting provision is a state or federal law which provides a shorter statute of limitations, in which case the shorter statute of limitations shall apply,' " which *Honig* considered "sufficient to put appellant on notice that a conflicting, shorter limitations provision relating to the subject matter *might* exist." (*Honig* at pp. 530–531, italics added.) Finally, the court concluded that the appellant had "failed to provide any authority for her assertion that the board of appeals was required to notify her of the actual statutory

12

provisions controlling the limitations period for her petition challenging its . . . decision." (*Id.* at p. 531.)

While all the court's comments were accurate, in our view they minimized the fact that section 65009 is a lengthy and complex statute, and subdivision (c)(1)(E) is contained in a long list of situations where the 90-day limitations period applies. Indeed, it is contained in an entirely different code section (the Government Code) from the one identified in the form text used by the Board of Appeals (the Code of Civil Procedure). The complexity of the statutes has been difficult for lawyers to navigate (as evidenced by the caselaw), and can only be more so for those, such as Memarzadeh, who are proceeding without an attorney. *Honig* put respondents on notice that the form instructions were a trap for the unwary. More than 21 years later, we reiterate the point more emphatically, and we strongly urge respondents to update and clarify the form.

### III.
### DISPOSITION

The judgment entered after the sustaining of respondents' demurrer is affirmed. Respondents shall recover their appellate costs.

_____

Humes, P. J.

WE CONCUR:

_____

Banke, J.

_____

Langhorne Wilson, J.

*Memarzadeh v. Board of Appeals of the City and County of San Francisco*
A172009

14