Filed 2/15/19; certified for publication 3/12/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| 1305 INGRAHAM, LLC, | B287327 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS169544) |
| v. | |
| CITY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Amy D. Hogue, Judge.  Affirmed.

Alexander and Yong and Jeffrey S. Yong for Plaintiff and Appellant.

DLA Piper, A. Catherine Norian and Karen L. Hallock for Respondent 7th & Witmer.

Michael N. Feuer, City Attorney, Terry P. Kaufman Macias, Assistant City Attorney, Donna Wong and Kimberly A.

Huangfu, Deputy City Attorneys for Defendant and Respondent City of Los Angeles.

---

This appeal concerns the development of a mixed-use commercial and affordable housing project at the intersection of 7th Street and Witmer Street in Los Angeles. Appellant 1305 Ingraham, LLC filed an administrative appeal challenging respondent City of Los Angeles's project permit compliance review. The City scheduled but never held a hearing on the appeal. A few days after the hearing date, the City approved the project; it filed and posted a notice of determination with the county clerk approximately one week later. Real party in interest/respondent 7th & Witmer, LP moved forward with the project.

Nine months later, appellant filed a petition for a writ of mandate in which it alleged that the project failed to comply with the California Environmental Quality Act (CEQA). In response to 7th & Witmer's demurrer based on CEQA's 30-day statute of limitations, appellant filed an amended petition abandoning its CEQA claim and alleging instead that the city's failure to hold a hearing on its appeal violated a Los Angeles Municipal Code provision requiring the Area Planning Commission to hold a hearing prior to deciding an appeal. 7th & Witmer and the city jointly demurred on statute of limitations grounds. The trial court sustained the joint demurrer without leave to amend.

Appellant contends the trial court erred in concluding its claim was time-barred by the 90-day statute of limitations in Government Code section 65009, subdivision (c)(1) (section 65009(c)(1)). Appellant argues that its claim is instead subject to the three-year statute of limitations for actions "upon a liability

2

created by statute" set forth in Code of Civil Procedure section 338, subdivision (a) (section 338(a)). We disagree and affirm.

## FACTUAL BACKGROUND

On appeal from a judgment based on an order sustaining a demurrer, we assume all facts alleged in the operative complaint are true. (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 528.)

The development project at issue is a multi-story mixed-use project with affordable housing units in the upper stories and commercial retail space on the ground floor. 7th & Witmer proposed to build the project on a downtown Los Angeles lot owned by Sheng Cheng Chen, Sheng-Jen Chen, and Hsiu-Hsin Helen Chuang.[1]

On or about October 19, 2015, 7th & Witmer filed applications for an affordable housing determination, density bonus, and project permit compliance with the City's Planning Department.

On June 15, 2016, the city "issued a Specific Plan Project Permit Compliance Review Density Bonus & Affordable Housing Incentives (the 'Determination') to Real Party 7th and Witmer, L.P." The Determination stated that it would become final 15 days after the date it was mailed unless an appeal was filed with the City Planning Department.

Appellant filed a notice of appeal with the City Planning Commission on June 30, 2016, the last day of the 15-day appeal period. According to appellant, the appeal challenged "the

---

[1]The property owners were named as real parties in interest below and as respondents here. However, they have not been involved in the litigation and have not submitted briefs to this court.

3

requested incentives in the Determination."

Appellant alleges that a hearing on the appeal was set for July 28, 2016. Appellant further alleges that the file was never transmitted to the Area Planning Commission. Appellant additionally "is informed and believes and thereupon alleges that [appellant's] appeal hearing of July 28, 2016 was never held." "After July 28, 2016 [appellant] did not receive any information from [the City], or any agency of [the City], that the appeal hearing was conducted and/or ruled upon."

The City "approved the Project on August 1, 2016. Thereafter, a Notice of Determination was filed and posted with Office of the County Clerk on or about August 8, 2016."

**PROCEDURAL HISTORY**

Nine months after the notice of determination was filed, on May 10, 2017, appellant filed a petition for writ of mandate and complaint for declaratory relief in the trial court. In that petition, appellant alleged that the city "failed to comply with CEQA before approving the project because it did not require the [environmental impact report] that would show how the lack of analysis of parking and traffic would negatively impact the Project." As part of its CEQA claim, appellant further alleged that the city "never responded nor held a hearing to determine the merits of [appellant's] appeal." Appellant sought a writ of mandate directing the city "to rescind all approvals for the project alleged herein, and commanding [the City] to comply with CEQA." It also sought an injunction barring further action on the project "until such time as they have complied with CEQA," and a declaration that the Determination was invalid.

Appellant served the city, 7th & Witmer, and the landowners on October 17, 2017. On October 20, 2017, 7th &

4

Witmer filed a demurrer. In the demurrer, 7th & Witmer asserted that appellant's CEQA claims were time-barred under Public Resources Code section 21167, subdivision (c), which provides a 30-day limitations period for claims alleging an inadequate environmental impact report. 7th & Witmer also asserted that the claim regarding the city's failure to hold an appeal hearing was time-barred by the 90-day limitations period in section 65009(c)(1).

7th & Witmer requested that the trial court expedite proceedings on its demurrer to accommodate rapidly approaching financing deadlines for the project. The trial court granted the request over appellant's objection and set the demurrer for hearing on November 7, 2017.

On October 31, 2017, appellant filed a first amended petition in lieu of opposition to the demurrer. The amended petition abandoned the CEQA claim in favor of a claim that the City violated appellant's due process rights by denying it an appeal hearing to which it was entitled under the Los Angeles Municipal Code (LAMC). Appellant alleged that its appeal filing should have stayed the project under LAMC section 11.5.7.C.6. Appellant further alleged that LAMC section 16.05.H.1, which is in the "Appeals" subsection of the LAMC section governing "Site Plan Review," required the city to hold a hearing before deciding its appeal. LAMC section 16.05.H.1 provides in relevant part, "Prior to deciding an appeal, the Area Planning Commission shall hold a hearing or direct a hearing officer to do so." Appellant alleged that the city approved the project without a hearing. It sought "a writ of mandate returning the parties to the status quo ante, staying the Project pursuant to LAMC Section 11.5.7 C.6, overturning all approvals of the Project made after [appellant]

5

filed its appeal and ordering [the City] to provide a hearing on [appellant's] appeal." Appellant further sought injunctive relief preventing any further action on the project until its appeal was resolved.

7th & Witmer demurred to the amended petition.[2] It argued that the amended petition "suffers from the same fatal defect as the original petition . . . all of its claims are time-barred." 7th & Witmer contended that the claim was governed by section 65009(c)(1)(E) or (F), both of which require a claimant to commence a proceeding and serve the relevant "legislative body within 90 days after the legislative body's decision." (§ 65009(c)(1).) Subdivision (E) so limits actions "[t]o attack, review, set aside, void or annul any decision on matters listed in Sections 65901 and 65903, or to determine the reasonableness, legality, or validity of any condition attached to a variance, conditional use permit, or any other permit." (§ 65009(c)(1)(E).) Subdivision (F) so limits actions "[c]oncerning any of the proceedings, acts, or determinations taken, done, or made prior to any of the decisions listed in subparagraphs (A), (B), (C), (D), and (E)." (§ 65009(c)(1)(F).)

7th & Witmer also pointed to LAMC section 16.05.H.4, the last sentence of which provides that the decision of the planning director becomes final "[i]f the Area Planning Commission fails to act within the time specified," and argued that the 90 days for appellant to file suit began running after the commission failed to hear the appeal. The city joined the demurrer and adopted 7th & Witmer's arguments in their entirety.

---

[2]It also filed a reply in support of its original demurrer. The trial court overruled that demurrer as moot in light of the amended petition.

Appellant opposed the demurrer. It argued that its amended petition alleged a violation of a statute—LAMC section 16.05.H.1—and therefore was governed by the three-year statute of limitations in section 338(a), which applies to "[a]n action upon a liability created by a statute, other than a penalty or forfeiture." It further argued that section 65009(c)(1) was not applicable because no "legislative body" rendered a "decision." Appellant also contended that the last sentence in LAMC section 16.05.H.4 did not apply because "[t]he only 'time specified' within the provision is the time to render the written decision *after* the appeal is heard." Moreover, appellant argued, it would be absurd to allow the city to skirt its statutory obligations to hear appeals by allowing it to reach a final decision simply by doing nothing.

The court heard and sustained the demurrer without leave to amend on November 27, 2017. In its written order, the court concluded that the action was time-barred by section 65009(c)(1). The court reasoned that section 65009(c)(1) was intended to provide certainty to property owners and governments seeking to zone and develop property and as such was applicable to a broad range of local zoning and planning decisions. The court concluded that the city's Determination was one such decision that became final under LAMC section 16.05.H.4 when the commission failed to act. The court observed that allowing the petition to move forward "would undermine Section 65009's purpose of providing certainty for property owners and avoiding lengthy delays to housing projects."

The court was "not persuaded" by appellant's argument that section 65009(c)(1) was inapplicable because it was not challenging any "legislative body" decision but merely was seeking to obtain a hearing and written decision. The court

pointed out that appellant's complaint sought not only a hearing but also the set aside of the June 15, 2016 Determination and all subsequent project approvals. The court also distinguished appellant's primary case authority, *Urban Habitat Program v. City of Pleasanton* (2008) 164 Cal.App.4th 1561 (*Urban Habitat*) on the ground that appellant's statutory claim, unlike that of the plaintiff in *Urban Habitat*, "is directly related to the city's decision to approve 7th and Witmer's application for Project Permit Compliance."

Appellant timely appealed.

## DISCUSSION

### I. Standard of Review

We review the trial court's order sustaining the demurrer without leave to amend de novo. (*Save Lafayette Trees v. City of Lafayette* (2018) 28 Cal.App.5th 622, 627). "In conducting the review, this court exercises its independent judgment to determine whether the action can proceed under any legal theory. [Citation.] Leave to amend should not be granted if the pleadings disclose the action is barred by a statute of limitation." (*Ibid.*) "'The determination of the statute of limitations applicable to a cause of action is a question of law we review independently.' [Citation.]" (*Stockton Citizens for Sensible Planning v. City of Stockton* (2012) 210 Cal.App.4th 1484, 1491 (*Stockton*).)

### II. Analysis

Appellant contends the statute of limitations in section 65009(c)(1) does not apply because there was no "decision" on its appeal, no "legislative body" made a ruling, and absurd results would ensue if it did. We reject these arguments.

"'In construing a statute "[courts] begin with the fundamental rule that a court 'should ascertain the intent of the

8

Legislature so as to effectuate the purpose of the law.""" [Citation.] '[W]here the language [of the statute] is clear, its plain meaning should be followed.' [Citation.]" (*Stockton*, *supra*, 210 Cal.App.4th at p. 1491.)

Government Code section 65009 is entitled, "Actions or proceedings challenging local zoning and planning decisions; legislative findings; limitation of issues; time limitations; application of section." In enacting the statute, the Legislature found and declared "that there currently is a housing crisis in California and it is essential to reduce delays and restraints upon expeditiously completing housing projects." (Gov. Code, § 65009, subd. (a)(1).) It further found and declared that legal actions challenging "the implementation of general plan goals and policies that provide incentives for affordable housing, open-space and recreational opportunities, and other related public benefits, can prevent the completion of needed developments even though the projects have received required government approvals." (Gov. Code, § 65009, subd. (a)(2).) The Legislature expressly intended Government Code section 65009 "to provide certainty for property owners and local governments regarding decisions made pursuant to this division." (Gov. Code, § 65009, subd. (a)(3).) "To this end, Government Code section 65009, subdivision (c) establishes a short, 90-day statute of limitations, applicable to both the filing and service of challenges to a broad range of local zoning and planning decisions." (*Honig v. San Francisco Planning Department* (2005) 127 Cal.App.4th 520, 526.)

That statute of limitations is set forth in section 65009(c)(1), which provides in relevant part: "no action or proceeding shall be maintained in any of the following cases by any person unless the action or proceeding is commenced and

9

service is made on the legislative body within 90 days after the legislative body's decision: [¶] . . . [¶] (E) To attack, review, set aside, void, or annul any decision on the matters listed in sections 65901 and 65903, or to determine the reasonableness, legality, or validity of any condition attached to a variance, conditional use permit, or any other permit.  [¶] (F) Concerning any of the proceedings, acts, or determinations taken, done, or made prior to any of the decisions listed in subparagraphs . . . (E)."

There is no real dispute that appellant's challenge to the project is within the general subject area covered by section 65009(c)(1).  However, appellant argues that the statute cannot apply because the opening clause requires a "legislative body's decision," and no "decision" was rendered by a "legislative body."

Appellant's contention that a "legislative body's decision" is necessary rests upon the plain language of the statute.  The opening clause of section 65009(c)(1) specifically states that any of the listed proceedings must be commenced and served "within 90 days after the legislative body's decision."  Under ordinary grammar rules, this clause means that a "decision" is the relevant event from which the statute of limitations runs. Indeed, respondents concede that "the 90-day limitations period under Section 65009 is triggered by a **decision**."

Whether the requisite "decision" exists here is disputed. Section 65009(c)(1) does not define "decision," and no party has directed us to an applicable provision in the Government Code. Appellant instead relies on LAMC section 16.05.H.1, a subsection of an "Appeals" section that is entitled "Authority," which provides, "The Area Planning Commission of the area in which the property is located shall have the authority to decide appeals from site plan review decisions made by the Director.  Prior to

10

deciding an appeal, the Area Planning Commission shall hold a hearing or direct a hearing officer to do so." Appellant asserts that under that provision, "a prerequisite to any decision is the mandate that a hearing be conducted." Thus, "there could be no determination by the Planning Commission (final or otherwise) until after Appellant's appeal was heard."

We are not persuaded by this argument. LAMC section 16.05.H.4, a later provision entitled "Decision" within the same "Appeals" subsection as LAMC section 16.05.H.1, states: "The Area Planning Commission shall render its decision in writing within 15 days after completion of the hearing. The Area Planning Commission may sustain or reverse any decision of the Director . . . . The decision shall be in writing and based upon evidence in the record, including testimony and documents produced at the hearing before the Area Planning Commission. . . . If the Area Planning Commission fails to act within the time specified, the action of the Director shall be final." This section, by its plain terms, states that the Commission's failure to act in a timely fashion renders the Director's decision the final one. Here, appellant alleges the Commission failed to adjudicate appellant's appeal and render its own written decision. The Director's determination—which no one disputes constitutes a "decision"— thus became the final "decision" from which the statute of limitations began running 15 days after the scheduled July 28, 2016 hearing date.

Appellant contends that this interpretation of LAMC section 16.05.H.4 is improper and leads to "absurd results" for several reasons. First, it argues that this interpretation "ignores the allegation of the [first amended petition] that such an interpretation renders the provision unconstitutional," and

11

therefore "is an issue for another day." Appellant indeed alleged, "To the extent Respondent contends that LAMC 16.05.H.4 permits the City to fail to hear Petitioner's appeal, Petitioners contend that any such reading of said provision would render it unconstitutional on its face and as applied because it denied Petitioner their [*sic*] substantive and procedural due process rights under law." This allegation, however, misconstrues the nature of LAMC section 16.05.H.04 and other similar provisions throughout the LAMC that clarify what happens when an entity fails to act. Rather than condoning or authorizing inaction, such provisions provide a backstop to provide interested parties with an actionable decision in the event of a procedural lapse by the decision-making body.

Appellant next contends that the only "time specified" in LAMC section 16.05.H.4 is "within 15 days after completion of the hearing," and asserts that it "is unaware of any authority which allows the last sentence of Section 16.05.H.4 to eviscerate the mandates of Section 16.05.H.1 that a hearing be conducted [p]rior to deciding an appeal." Thus, it argues, "the LAMC must be read to require an appeal be deemed denied only if the appellate body fails to act after the appeal has been heard." Taken to its logical end point, this argument means, as appellant squarely acknowledges, that any "limitations period cannot commence until a hearing takes place."

We reject appellant's conclusion. "Our primary goal is to implement the legislative purpose, and, to do so, we may refuse to enforce a literal interpretation of the enactment if that interpretation produces an absurd result at odds with the legislative goal." (*Honig v. San Francisco Planning Department, supra*, 127 Cal.App.4th at p, 527.) The purposes of LAMC section

16.05 "are to promote orderly development, evaluate and mitigate significant environmental impacts, and promote public safety and the general welfare by ensuring that development projects are properly related to their sites, surrounding properties, traffic circulation, sewers, other infrastructure and environmental setting; and to control or mitigate the development of projects which are likely to have a significant adverse effect on the environment as identified in the city's environmental review process, or on surrounding properties by reason of inadequate site planning or improvements." (LAMC § 16.05.A.) These purposes are not served if the statute is interpreted to allow a project to remain in a state of perpetual limbo due to a procedural error. Interpreting the statute to contain a mechanism by which a determination may become final notwithstanding a procedural irregularity does not authorize the city to violate the procedural rights of potential appellants. Rather, it advances the purposes of site plan review set forth in the LAMC and provides parties whose rights may have been violated a "decision" from which they may seek writ or other relief.

Appellant next argues that section 65009(c)(1) cannot apply because a "legislative body" did not render the "decision." Relying on a dissenting opinion in *DeVita v. County of Napa* (1995) 9 Cal.4th 763, 802, fn. 2 (Arabian, J., dissenting), appellant contends that the term "legislative body," undefined in the context of city planning, has been defined in other contexts to mean "'board of trustees, city council, or other governing body of a city.'" It "submits, therefore, that the reference to a 'legislative body' in Section 65009 contemplates more than the findings of a single person such as Respondent's City Director," whose determination was the final one rendered in this case. Appellant

13

asserts that LAMC section 16.05.H.1 supports this interpretation, because it says that "the Area Planning Commission shall hold a hearing or direct a hearing officer to do so"; appellant reasons that "the appellate body who 'shall' hold a hearing on the appeal should be considered the 'legislative body' for purpose of Section 65009(c)(1)." Respondents contend that the LAMC, "enacted by a legislative body, delegates to the Director broad authority to approve, disapprove or approve with conditions an application for Project Permit Compliance." They also point to *Stockton, supra*, 210 Cal.App.4th 1484, as supportive of this interpretation.

Respondents have the better argument. The Los Angeles City Charter provides that members of the Area Planning Commission are appointed, not elected, and that "Area Planning Commissions are quasi-judicial agencies." (Los Angeles City Charter, art. V, § 552.) A "quasi-judicial agency" is not a "legislative body." Moreover, Government Code section 65901, referenced in section 65009(c)(1), authorizes decisions by a "board of zoning adjustment or zoning administrator." Neither of those entities—an individual and a "board" that does not govern a city—meets the definition of "legislative body" advanced by appellant.

*Stockton, supra*, 210 Cal.App.4th 1484 is instructive. There, the plaintiffs petitioned for a writ of mandate to direct the City of Stockton to vacate its approval of a Wal-Mart Supercenter. (*Stockton, supra*, 210 Cal.App.4th at p. 1487.) The trial court entered judgment for defendants on the pleadings after concluding that the suit was time-barred by section 65009(c)(1). (*Ibid.*) On appeal, plaintiffs contended that Stockon's approval, which was in the form of a letter issued by

14

the Director of the city's Community Development Department, did not start the 90-day limitations period running "because that subdivision is limited to challenges concerning variances and permits issued after a decision by a legislative body." (*Ibid.*) The court of appeal concluded "that section 65009, subdivision (c)(1)(E) is not so limited, and that it applies to the Director's approval of the Wal-Mart Supercenter project because the Director was acting as City's zoning administrator and was exercising powers granted by local ordinance when he approved construction of the Wal-Mart Supercenter." (*Ibid.*)

The court reasoned that "interpreting the phrase 'legislative body' in section 65009, subdivision (c)(1), as encompassing the board of zoning adjustment, zoning administrator, and board of appeals referenced in sections 65901 and 65903 not only avoids rendering a portion of section 65009, subdivision (c)(1)(E), meaningless, it harmonizes the provisions of the statutes as a whole." (*Stockton*, *supra*, 210 Cal.App.4th at p. 1495.) The court further explained: "[W]hen considered as a whole, the language of section 65009, subdivision (c)(1), supports a finding that the Legislature intended to include decisions by zoning administrators in the 90-day limitations period. Subdivision (c)(1) provides that 'no action or proceeding shall be maintained *in any of the following cases* by any person unless the action or proceeding is commenced . . . within 90 days after the legislative body's decision' (italics added), and thereafter specifies six cases to which the limitations period applies. (§ 65009, subd. (c)(1)(A)-([F]).) Three of those cases begin with the phrase '[t]o attack, review, set aside, void, or annul the decision of a *legislative body*' (*id.*, subd. (c)(1)(A), (B), & (D), italics added), and three do not, including subdivision (c)(1)(E) (*id.*, subd. (c)(1)(C),

15

(E) & (F)) [although subdivision (c)(1)(C) involves a legislative decision]). Rather, subdivision (c)(1)(E) begins with the phrase: 'To attack, review, set aside, void, or annul *any* decision on the matters listed in Sections 65901 and 65903 . . . .' (*Id.*, subd. (c)(1)(E), italics added.) The Legislature's failure to limit subdivision (c)(1)(E) to decisions of a legislative body on the matters listed in sections 65901 and 65903, while doing so elsewhere, supports the conclusion that the Legislature did not intend to exclude decisions by zoning administrators from section 65009, subdivision (c)(1)(E)." (*Stockton*, *supra*, 210 Cal.App.4th at pp. 1495-1496, footnotes omitted.)

This reasoning applies here. The text of section 65009(c)(1) does not support appellant's contention that its application is limited to decisions of a "legislative body." "[S]ection 65009 expressly incorporates the 'matters' listed in sections 65901 and 65903, regardless of the legislative body charged with making the decision. The courts 'have rejected the notion that the reviewing body, rather than the underlying decision being reviewed, determines the applicability of Section 65009.' [Citation.]" (*Save Lafayette Trees v. City of Lafayette*, *supra*, 28 Cal.App.5th at p. 630.)

Appellant contends that *Stockton* is distinguishable because the court "took pains" to emphasize that the Director who made the decision was a zoning administrator. Here, it argues, "there was no evidence or argument that Section 65901 applied, that even if it did Respondent City's Director was the 'zoning administrator' for purposes of Section 65901 or any reference to the LAMC granting Respondent City's Director the same powers/authority granted the Director of the City of Stockton." This argument is not persuasive. Appellant's position

16

is that section 65009(c)(1) applies only to decisions by legislative bodies and under no circumstances can apply to "the findings of a single person." This position is undermined by both the textual analysis of the statute as explained in *Stockton*, and by LAMC section 16.05.H.1, which expressly allows the Area Planning Commission to "direct a hearing officer"—a single individual—to conduct the relevant appellate hearing from which a "decision" unquestionably would result.

Appellant argues that the three-year statute of limitations in section 338(a) should apply because it is challenging the City's failure to comply with LAMC section 16.05.H.1's requirement that "Prior to deciding an appeal, the Area Planning Commission shall hold a hearing or direct a hearing officer to do so." It relies on *Urban Habitat*, *supra*, 164 Cal.App.4th 1561. In *Urban Habitat*, housing nonprofit Urban Habitat alleged that the City of Pleasanton failed to comply with state laws requiring it to allocate a specified portion of new housing units for low-, very-low-, and moderate-income populations. (See *Urban Habitat*, *supra*, 164 Cal.App.4th at pp. 1567-1569.) The trial court sustained Pleasanton's demurrer on the ground that all of Urban Habitat's causes of action were time-barred under section 65009(c)(1). (*Id.* at p. 1570.) As relevant here, the court of appeal reversed on the fourth cause of action, which alleged "that the City failed to comply with mandatory duties set out in Program 19.1 of its Housing Element to take steps, by April 15, 2004, to rezone a certain amount of property within the City to accommodate its share of the Regional Housing Needs Allocation." (*Id.* at p. 1578.) The court concluded that cause of action was subject to section 338(a) rather than section 65009(c)(1). It explained, "A failure to comply with duties

17

allegedly imposed by law is neither an 'action' nor a 'decision' and, therefore, does not fall under section 65009.  Furthermore, the claim is timely under Code of Civil Procedure section 338, subdivision (a), because it was brought . . . less than three years after the date by which the complaint alleges the City was required to complete rezoning in order to accommodate its share of the Regional Housing Needs Allocation." (*Ibid.*)

We agree with the trial court and respondents that *Urban Habitat* is distinguishable.  The claim in *Urban Habitat* concerned a city's alleged failure to comply with a law requiring the city to enact zoning regulations by a deadline set several years out; it did not arise in the context of a specific project or discrete permitting decision within the scope of section 65009(c)(1).  Thus, the more general three-year statute of limitations applied.  Here, the City's alleged failure to comply with a statute arose within the context of its approval of an affordable housing project.  Appellant's action is an effort to "attack, review, set aside, void, or annul" a specific determination (section 65009(c)(1)(E)) and/or concerns "any of the proceedings, acts, or determinations taken" in the course of a permit approval (section 65009(c)(1)(F)).  This places the alleged failure to comply with a statute within the ambit of section 65009(c)(1).  Even if section 338(a) is applicable in a broad sense, "'a specific statute of limitations takes precedence over a general one, even though the latter "'would be broad enough to include the subject to which the more particular provision relates.' [Citation.]'" [Citation.]" (*Barker v. Garza* (2013) 218 Cal.App.4th 1449, 1456.)  Likewise, "[a]s a general principle, if two statutes of limitation apply to a particular claim, then the shorter period controls over the longer one, unless the statutes can be harmonized." (*Royalty Carpet*

18

*Mills, Inc. v. City of Irvine* (2005) 125 Cal.App.4th 1110, 1114.)
The three-year general statute of limitations in section 338(a)
cannot be harmonized with the shorter, more specific limitations
period in section 65009(c)(1).  The latter controls.

**DISPOSITION**

The judgment of the trial court is affirmed.  Respondents
are awarded their costs of appeal.


COLLINS, J.


We concur:


MANELLA, P. J.


WILLHITE, J.

Filed 3/12/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| 1305 INGRAHAM, LLC, | B287327 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS169544) |
| v. | ORDER GRANTING PUBLICATION REQUEST |
| CITY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

THE COURT∗

The opinion in the above-entitled matter filed on February 15, 2019, was not certified for publication in the Official Reports. Good cause appearing, it is ordered that the opinion in the above-entitled matter be published in the official reports. Pursuant to California Rules of Court, rule 8.1105(b), this opinion is certified for publication.

∗ MANELLA, P.J.          WILLHITE, J.          COLLINS, J.